**Luis L. CERVANTES, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 15785.**

United States Court of Appeals
Ninth Circuit.

Jan. 21, 1959.

Willis D. Hannawalt, San Francisco, Cal., for appellant.

Luis L. Cervantes, Steilacoom, Wash., in pro. per.

Laughlin E. Waters, U. S. Atty., Peter J. Hughes, Robert John Jensen, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BONE, POPE, and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

Luis L. Cervantes appeals from his conviction on three counts of illegally importing, transporting, and concealing narcotics in violation of 21 U.S.C.A. § 174. The one question presented is whether narcotics and a hypodermic syringe, received in evidence over appellant's objection, were obtained by an illegal search and seizure.

The facts having to do with the search and seizure are not in dispute. On September 27, 1955, Kenneth Grant, a federal customs investigator, received information about a man who was said to have gone to Tijuana from Los Angeles to purchase narcotics. He was described as a short man of Mexican extraction with the given name of "Luis," the surname being unknown. The information was that "Luis" was dealing with one Manuel Vargas—a person known to Grant since 1946 as a vendor of narcotics in Tijuana. The informant further advised that the car driven by "Luis" contained a secret compartment for hiding marijuana. The informant described the car as a green Plymouth, Dodge, or Chrysler, with license number 1W47527 or 1W47537.

Grant testified that his source was one who "has informed." Neither he nor any other witness, however, indicated that the informant was personally known to him, or whether past experience demonstrated that this was a reliable source. No evidence was offered concerning the manner in which the informant obtained his information—whether by personal observation or otherwise. Nor does the record reveal where Grant was when he

received the information and how it was communicated to him.

Upon receiving this information on September 27, Grant notified border officials to be on the lookout for the described vehicle and occupant. No automobile with one of the indicated license numbers was observed crossing the border on that day. Grant thereafter made a check of the registration of these numbers, but found no automobile registered to a "Luis."

A month later—October 28, 1955—Grant was contacted by the same informant and was advised that the same car was in Tijuana again. At that time the informant gave a corrected license number—1W4752. Grant then went to Tijuana and observed a person answering the description provided by the informant driving a 1952 Chrysler with the indicated license number on First Street in that city. Grant again alerted the border inspectors for the purpose of giving this vehicle and its driver a thorough search upon entry into the United States. The record does not disclose whether the automobile and its driver were searched at the border on that day.

Grant thereafter checked the corrected license number and found that it was registered to Luis Cervantes in Los Angeles. Grant then made a check of the records in the sheriff's office of San Diego County and learned that in 1941 Cervantes had been convicted in federal court for smuggling marijuana. He also had a number of other arrests for narcotics violations.

On December 8, 1955, Grant again saw Cervantes driving his car on First Street in Tijuana. Once more Grant alerted border inspectors. He requested that the car and its occupants be searched thoroughly "as I suspected narcotics." Grant also notified the immigration authorities of his suspicions and requested that their Oceanside office be advised by radio.[1] Again the record does not disclose whether Cervantes was stopped and searched at the border.

On the evening of December 8, 1955, Cervantes was stopped at San Clemente, California, while driving north in his Chrysler. He was traveling on U. S. Highway 101, which is one of the two main routes between San Diego and Los Angeles. Cervantes was stopped by Clifford J. Davis, a patrol inspector of the Immigration and Naturalization Service, and also an authorized customs inspector. Davis was working out of the Oceanside office and testified that he acted on the basis of Grant's "alert" for "possible suspects." Cervantes was not stopped because of any traffic or other law violation then visible. Davis did not have a warrant for Cervantes' arrest or search.

Davis testified that Cervantes was not "arrested," but was immediately searched. A substance later identified as heroin and a hypodermic syringe were found on Cervantes' person. Thereafter Cervantes, his lady passenger, and the automobile were taken to the police station in San Clemente where a further search of the car was made. A number of marijuana seeds were discovered and a "secret" compartment was found in the car.

At the jury trial Cervantes moved to suppress this evidence. He also objected to the questions eliciting information concerning the "secret" compartment. The motion was denied and the objection was overruled, the evidence being received as part of the government's case.

Invoking the Fourth Amendment, appellant argues that this evidence was obtained by an unreasonable search and seizure and was therefore, under Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 inadmissible in this federal prosecution. The search and seizure was unreasonable, appellant contends, because the arresting officer did

---

1. Grant has been employed by the Customs Service for twenty-six years. During sixteen of these years he has been assigned to San Diego. He considers Tijuana the main source of supply for narcotics used in California. In the cases he has investigated, seventy-five per cent of the contraband was going outside of San Diego, and most of this was going to Los Angeles.

not have probable cause to believe that Cervantes was carrying contraband or committing a felony.[2]

■ The government does not deny that the Fourth Amendment applies to the seizure of narcotics.[3] It appears to accept appellant's proposition that the reasonableness of a search made of an automobile on the highway and its driver depends upon a showing of probable cause.[4] Nor does the government contend that a showing of probable cause is excused in this case because the search was made in connection with a border entry.[5] The government does, however, dispute appellant's contention that probable cause was not shown in this case.

■ One need not have evidence which would justify a conviction in order to have probable cause to believe that an offense has been or is being committed. On the other hand, probable cause means more than a bare suspicion. In Hamer v. United States, 9 Cir., 259 F.2d 274, 282, we quoted with approval this statement from the opinion in Brinegar v. United States, supra:

"Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. [Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280.]"

Appellant argues that probable cause was not shown in this case. In support of this he contends: (1) The federal officers had no personal knowledge gained by observation or otherwise which would warrant the belief that Cervantes was transporting narcotics on December 8, 1955; (2) the information concerning such activity, which came to the officers from an informant, would not warrant the belief that Cervantes was transporting narcotics on December 8, 1955, because such information related to incidents which had occurred from six to ten weeks prior to that date; and (3) there is in any event no evidence in the record that this informant was reasonably trustworthy, and without such evidence probable cause may not be based thereon.

The evidence as summarized above supports appellant's contention that the federal officers had no personal knowledge gained by observation or otherwise which would warrant the belief that Cervantes was transporting narcotics on December 8, 1955. The only personal

2. No contention is made that the search and seizure was illegal because the arresting officer proceeded without a search warrant or a warrant of arrest. It was settled in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, that under the Fourth Amendment a valid search of a vehicle moving on a public highway may be had without a warrant, if probable cause for the search exists.

3. That the Fourth Amendment does apply to the seizure of narcotics, see United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59.

4. That this is the proper test of the reasonableness of such a search, see Carroll v. United States, supra, 267 U.S. at pages 155–156, 45 S.Ct. at page 285.

5. An authorized federal border official may, upon unsupported suspicion, stop and search persons and their vehicles entering this country. 19 U.S.C.A. § 482. Carroll v. United States, supra, 267 U.S. at pages 153–154, 45 S.Ct. at page 285. But after entry has been completed a search and seizure can be made only on a showing of probable cause. Landau v. United States, 2 Cir., 82 F.2d 285, 286; United States v. Yee Ngee How, D.C., 105 F.Supp. 517, 523. The record does not reveal the elapsed time between Cervantes' re-entry into the United States on December 8, 1955, and his arrest at San Clemente. However, we take judicial notice of the fact that San Clemente is more than seventy miles from the nearest port of entry from Mexico. There is no indication in the record that Cervantes had wrongfully eluded federal officials at the border, and he was not stopped at San Clemente in connection with a pursuit. In so far as the record reveals, therefore, his entry had been completed prior to the time he reached San Clemente, and the government does not contend otherwise.

knowledge which Davis had prior to the arrest was that Cervantes was driving through the city of San Clemente in a lawful manner. He stopped and searched Cervantes because he had received an "alert" from his Oceanside office, and not because of any personal knowledge of wrongdoing.[6]

The only other officer claiming to have personal knowledge is Grant, who observed Cervantes in Tijuana on October 28 and December 8, 1955, and who made some investigation of car registrations and criminal records. Grant did not observe Cervantes contact Vargas or any other known narcotics dealer. He did not see Cervantes handle or transport any narcotics, or conduct a business transaction with any person. All he observed was that Cervantes was driving in Tijuana, a city which Grant knew to be a prime source of supply for the illegal importation of narcotics into California. He also ascertained that Cervantes had been convicted of narcotics offenses several years previously.

These facts personally known to Davis and Grant, whether considered separately or in the aggregate, do not add up to anything approaching probable cause as defined above. The government argues, however, that when there is added to the information personally known to Davis and Grant the further information Grant received from the informant, and consideration is given to the steps Grant took to verify this information, the aggregate makes a sufficient showing of probable cause.

The only information Grant received as to Cervantes' possible narcotics activities was that which came to him on September 27, 1955. He was told that on that date a man answering Cervantes' description was in Tijuana to buy narcotics, and was in contact with Manuel Vargas, known to Grant as a narcotics vendor. The only information thereafter given to Grant was that communicated on October 28, 1955. This information was that Cervantes was again in Tijuana, and that a corrected license number had been ascertained. Grant was not told that Cervantes had come to Tijuana on October 28 to purchase narcotics, or that he was or had been in contact on that date with Vargas or any other narcotics vendor.

The fact that Cervantes may have purchased narcotics in Tijuana on September 27, 1955, for importation into this country does not tend to prove that his presence in Tijuana ten weeks later must have been for the same purpose. Thus, assuming that Grant had reason to place reliance upon the information supplied by his informant, we do not believe that it would warrant a man of reasonable caution in believing that Cervantes must have been illegally transporting narcotics when he entered the United States from Mexico on December 8, 1955.[7]

In view of this conclusion we do not reach the question of whether a sufficient showing was here made as to the trustworthiness of the informant to warrant the officers in relying upon the information which he supplied.[8] It is immaterial

6. Davis was unquestionably warranted in acting on the basis of the "alert," since he was then entitled to assume that such alert was issued for probable cause. But if the facts and law do not bear out this assumption, the seizure must be regarded as illegal for purposes of applying the Weeks rule, however justified the field officer may have been in acting upon the alert.

7. Such information might well have been sufficient to warrant an investigation of Cervantes' activities and a surveillance of his movements. This, of course, is quite different from stopping and searching him on the highway without probable

cause to believe that an offense had been or was then being committed.

8. The rule formulated by the cases is that information received from an outside source, however sufficient its content may be, will not suffice to show probable cause unless such source is believed to be reliable, or unless it has subtantial verification or supplementation in facts personally known to the officer or officers. See, for example: Draper v. United States, 10 Cir., 248 F.2d 295, 299; Carter v. United States, 5 Cir., 231 F.2d 232, 236; Wrightson v. United States, 95 U.S.

how trustworthy that informant may have been if the information he supplied has no tendency to prove that a crime had been or was being committed on or about the time of the search on December 8, 1955.

 The burden of showing probable cause is upon the government. Wrightson v. United States, supra. Since the facts are not in dispute, the question of whether that burden has been met presents a question of law. For the reasons stated above, we conclude that the government did not meet its burden and that the evidence in question should have been excluded because obtained by an illegal search and seizure.

The judgment is reversed and the cause is remanded with directions to grant appellant a new trial, or, in the discretion of the trial court, to dismiss the action.

App.D.C. 390, 222 F.2d 556; Contee v. United States, 94 U.S.App.D.C. 297, 215

F.2d 324, 326–327; Cannon v. United States, 5 Cir., 158 F.2d 952, 954.