James Coley JONES, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18365.

United States Court of Appeals Ninth Circuit.

Dec. 24, 1963.

Rehearing Denied Jan. 28, 1964.

Edgar G. Langford and J. Perry Langford, San Diego, Cal., for appellant.

Francis C. Whelan, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief Criminal Section, and J. Brin Schulman, Asst. U. S. Atty., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and PENCE, District Judge.

BARNES, Circuit Judge.

Appellant was convicted by a jury of possession of marihuana, violating Section 176a of Title 21 United States Code, and was sentenced to prison. Appellant's automobile was stopped after a United States Customs Agent had been personally informed, through an informant known to him (who had given reliable information in the past with respect to unlawful importation) that "two colored people, a man and a woman driving a 1956 Buick automobile red and white in color, bearing California license plates MXW 707, had arranged to obtain a package of marihuana and would prob-

ably attempt to bring it into the United States at a later hour."

The United States Customs Agent at the border ascertained such a car had just passed through customs, so a message was dispatched by radio to have police stop the vehicle. This was accomplished within two and one-half hours, some sixty-seven miles from the border.

This specifically identified automobile was stopped by Border Patrol Inspector James G. Crawford. In describing the events leading up to the search, the trial court found, in the memorandum denying the motion to dismiss and suppress and to require disclosure:

"It appears as an uncontradicted fact that defendants, in said automobile, came through the port of entry at about 1:10 A.M. of said date, and that the agent on duty at the border looked into the car with his flashlight, but did not open the trunk. Customs Agent Fred Parkerson testified that at about 1:10 A.M. of said day he received information that two colored people, a man and a woman, driving a 1956 Buick, red and white in color, bearing California license plates MXW 707 had made arrangements in Tijuana for a package of marihuana and that they would probably attempt to bring it into the United States. Mr. Parkerson stated that this information was brought to him personally by an informer. That information had been brought to him personally in the past by this informer concerning other violations of the narcotics laws, that the information had proved reliable and had led to seizures of contraband and arrests of persons passing contraband, and that he placed reliance in the word of this informer. Upon receiving the information regarding the Buick, Mr. Parkerson noted the description of the car and occupants and posted a 'lookout' with the agents engaged in inspecting the cars passing through the 'line' at the port of entry, but within a few min-

utes was told that the automobile had just passed through the line. Mr. Parkerson testified he then got into an automobile and tried to overtake the car on the freeway, but after a short distance, decided it would be useless, so returned to the Customs Office; immediately upon returning, Mr. Parkerson put out a message over the Border Patrol Radio to be relayed to the Oceanside and Temecula check points to have the officers there stop and search a Buick so described.

■ "It is our opinion that the testimony of Mr. Parkerson disclosed both pursuit of the car and probable cause for the search.

\* \* \* \* \* \*

"The Government called to the stand the officers who had participated in the search. One of them indicated that defendant's automobile was stopped in the process of a routine traffic check for aliens. It was indicated by one of the officers that when the lid of the trunk of the automobile was raised the officer saw a brown sack in the trunk, and from the sack there protruded a portion of a wrapped parcel. That from his experience in such matters, the officer deduced that the package contained marihuana, as he had seen many marihuana blocks similarly wrapped. That he lifted the sack from the automobile and asked defendant Jones to open it, whereupon the marihuana was discovered."

■ In commenting on the request for disclosure, in the same memorandum denying such relief, the trial court made the following pertinent statement:

"After Ir. Parkerson's testimony, defendants' counsel requested the Court to order disclosure of the name of the informer, claiming it was evident that someone had 'framed' the defendants in order to collect the reward usually paid to informers by the Government; that the defense of the defendants would be that they

knew nothing about the marihuana being in the car.

"As was said in the case of Roviaro v. U. S., 353 US 53 [77 S.Ct. 623, 1 L.Ed.2d 639], there is no fixed rule with respect to disclosure of the name of the informer. The problem is one which calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.

"In the case before us, the Government evidently intended to present its case without mention of the information which led to searching the car. It was only when it appeared likely that the search was illegal that the prosecution brought out evidence as to probable cause. Here, we are not dealing with evidence regarding an informer whom the Government puts forth as an actual participant in a crime."

After a detailed discussion of the evidence produced by defendants in an attempt to show how bulk marihuana was placed in the locked rear compartment of their car by some unknown third person, the trial judge commented:

"In weighing the evidence adduced at the hearing on the motions, it seems quite probable that Jones himself, placed the marihuana in the car and that the name of the informer is not essential to his defense. It appears more likely that the name is sought in an effort to force a dismissal of the case, since the Government announced it would not, under any conditions disclose the identity of the informer.

"Following the test laid down in Roviaro v. United States, we are of the opinion that defendants' request should be denied."

Appellant urges that Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, the very case relied upon by the trial court to deny the motion to name the informer, requires reversal. We disagree. That case holds the trial judge "*may* require disclosure [of the name of

an informant] and, if the Government withholds the information, dismiss the action." It does not hold the trial court must require disclosure in each instance. As the Supreme Court stated: "We believe that no fixed rule with respect to disclosure is justifiable." Cf. Draper v. United States, 1959, 358 U.S. 307, 79 S. Ct. 329, 3 L.Ed.2d 327.

Appellant urges on us that the disclosure of the informer's name is here required, because such fact might have helped defendant defend the case, citing primarily Costello v. United States, 9 Cir.1962, 298 F.2d 99; Plazola v. United States, 9 Cir.1961, 291 F.2d 56; Contreras v. United States, 9 Cir.1961, 291 F.2d 63; and certain dicta in Roviaro v. United States, supra. We do not think so.

In Roviaro, supra, Count I of his indictment charged a sale of narcotics by defendant to one John Doe. Count II did not name any person other than the defendant, and charged illegal transportation of narcotics. The government urged before the Supreme Court that because concurrent sentences were imposed on defendants on both Counts I and II, Count II should be upheld because the identity of the informer had no real bearing on that charge.

"Where the disclosure of an informer's identity," says the Supreme Court, " * * * is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege [of nondisclosure] must give way." (Id., 353 U. S. pp. 60–61, 77 S.Ct. pp. 627–628, 1 L.Ed. 2d 639.)

The Roviaro opinion then mentions the "no fixed rule" described above, and continues:

"While [in Count II] John Doe is not expressly mentioned, this charge [of Count II], when viewed in connection with the evidence introduced at the trial, is so closely related to John Doe as to make his identity and testimony highly material. * * * Doe was his [petitioner's] one material witness. * * * Doe had helped to set up the criminal occurrence and

had played a prominent part in it. His testimony might have disclosed an entrapment. * * * Finally, the Government's use against petitioner of his conversation with John Doe while riding in Doe's car particularly emphasizes the unfairness of the nondisclosure in this case. * * * Doe denied knowing petitioner or ever having seen him before. * * * [U]nder these circumstances, the trial court committed prejudicial error." (Emphasis added. Id., 353 U.S. pp. 63–65, 77 S.Ct. pp. 629–630, 1 L.Ed.2d 639.)

In Plazola, supra, the arresting officer *"had received no prior information with respect to this particular transaction"* (emphasis added) concerning which appellant was arrested. There was no warrant for his arrest. There was no violation of law with respect to narcotics taking place *in the presence* of the officers when Plazola's vehicle was stopped. We likewise found no unusual driving maneuvers. As we stated therein, "there was no[t] [even an] attempt made herein to justify by evidence any proof of the reliability of any informant." (Id., 291 F.2d p. 60.)

In Contreras, supra, his car was stopped for an "illegal alien" check seventy-two miles north of the Mexican border, a perfectly legal stopping of the car. No question of an informant was raised. We held the stopping for an alien check was proper, but no "probable cause" for a search of the auto *prior* to arrest. The arrest was the result of what the search disclosed. As we stated: "[T]here is nothing suspicious about a paper sack lying under a bedspread and jacket on the front seat of a car located seventy-two miles north of the Mexican-American border." (Id., 291 F.2d p. 66.)

In Costello, supra, the question of an illegal search and seizure was raised. Was there probable cause for the search in which the "appellant was struck on the head with the policemen's side-arms and became * * * saturated with blood * * *."?

In Costello, the government relied on a tip—"Dick has it in right and left pockets." In Costello we held: "The 'tip,' *if reliable,* was sufficient to establish probable cause. Draper v. United States,[1] 358 U.S. 307, 79 S.Ct. 329, 3 L. Ed.2d 327 (1958)." (Emphasis added.)

We then stated:

"All the cases in which a 'tip' has been heavily relied upon to establish probable cause have stressed the need for 'a substantial basis for crediting the hearsay,' Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960) or a record of 'accurate and reliable information,' Draper v. United States [supra]; in short, 'a previously reliable informant,' Espinoza v. United States, 278 F.2d 802 (5th Cir.1960). Prudent and cautious men would not act in so decisive a fashion in reliance on an uncorroborated anonymous caller, and there is nothing in this record to show that the present informant was anything more than that. [note]

"The so-called 'informer's privilege,' invoked to prevent disclosure of the identity of an informant, has been established in recognition of the need by law enforcement officials for sources of citizen information which will remain available only with some assurance of freedom from coercion or retaliation by persons ultimately brought to justice as the result of a 'tip.' This 'privilege' is not absolute, however, and occasionally the price of invoking it will be the dismissal of a case because of the inadmissibility of evidence, the source of which is not subject to challenge due to the invocation of the 'privilege.' The 'privilege' must give way when a challenge of the informant is essential to the proper disposition of the case. The determination of the validity of an arrest, search and seizure is essential to such a disposition. Wilson v. United States, 59 F.2d 390, 392 (3d Cir.1932). The Wilson case was cited approvingly by the United States Supreme Court in Roviaro v. United States, 353 U.S. 53, 61, 77 S.Ct. 623, 628, 1 L.Ed. 2d 639 (1957) in support of the following language:

" 'Most of the federal cases involving this [fairness] limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication.' [note]." (Id., 298 F.2d p. 101.)

We sent the case back for further hearing, stating:

"If after further hearing the court finds that the informant was in fact reliable, then the evidence seized was properly admitted at the original trial." (Id., 298 F.2d p. 102.)

Nor does the case of Cervantes v. United States, 9 Cir.1960, 278 F.2d 350, aid appellant, for there the informant's information was, as the government states in its instant brief, "stale and inaccurate." In Cervantes, the information was a month old; here it was two and one-half hours old.

There are actually two ways in which the information given by an informer can be proved "reliable." If "X" *once* tells police officer "Y" that he has cause to believe some certain illegal act will take place, or some certain fact exists, and "Y" subsequently finds out such statement of "X" is true, *thereafter* "Y"

1. We note that the "corroborative elements" in Draper were described by the Supreme Court in Ker v. California, 1962, 374 U.S. 23, 26, 83 S.Ct. 1623, 10 L.Ed.2d 726, as "innocuous in themselves."

has *some* reason to trust and rely on the accuracy of informant "X". The more times that such a sequence of events takes place, the greater the reliability. But this reliability is in the mind of "Y" (the police officer), not "X." Cross-examination of "X" to prove his own reliability would not be legally fruitful.

The second way that an informer's reliability can be confirmed is the actual appearance, at the time and place specified in such information, of the person, auto, drug or whatever it is that was predicted. This in itself adds authenticity to the original story. As Draper, supra, points out—the appearance of the man "who habitually walked fast," getting off a certain train carrying a certain "tan zipper bag" in a certain railroad station, confirms the informer's reliability.

Here the informer, known to be accurate and reliable, described in advance that two persons of certain description would, in an automobile of a certain model and painted in a certain way, pass over the Mexican-American border on a certain day (or night), and the auto would contain narcotics. When this event took place, it added to the previous reliability of the informant, and gave the government officers reason to stop appellant.

We also rely on Ker v. California, 1962, 374 U.S. 23, 35–36, 83 S.Ct. 1623, 1631, 10 L.Ed.2d 726. There the Supreme Court said:

> "Berman, in turn, revealed information from an informer whose reliability had been tested previously, as well as from other sources * *. That this information was hearsay does not destroy its role in establishing probable cause. Brinegar v. United States [338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879], (1959) supra."

Thus, the officer had ample probable cause and reasonable grounds to believe that appellant was violating the laws relating to narcotic drugs at the time of search. Finding the bulk marihuana, the arrest was lawful, as was the individual subsequent search and seizure.

See also Bruner v. United States, 5 Cir.1961, 293 F.2d 621, cert. denied 368 U.S. 947, 82 S.Ct. 388, 7 L.Ed.2d 343. There, as here, there had been no showing that a disclosure of the informer's identity to the appellant would have been relevant or helpful or essential to appellant for a fair trial. Cf. also Pegram v. United States, 6 Cir.1959, 267 F.2d 781, 782.

Under our view of the inapplicability of the cases cited in appellant's briefs, and hereinbefore discussed, we do not reach either (a) the question of the additional marihuana seeds found on the floor near the seats in appellant's car (and not in the trunk), or (b) the evidentiary value of the fact the trunk was locked when the car crossed the border back into the United States, but *could* perhaps have been unlocked when the car was in Mexico because of an allegedly malfunctioning lock, or (c) the likelihood that the appellant would leave his uniform in an unlocked trunk of his car on a Tijuana side street for several hours, or (d) that he would have no knowledge of an unlocked condition of a trunk with a flapping top, or (e) the authenticity of appellant's story as to an eight to ten hour trip to San Diego to see a friend, followed by no effort to see such friend, or (f) discrepancies between the testimony of appellant and his codefendant. All such matters undoubtedly influenced the trial court's decision on the motion to dismiss and suppress (for they were mentioned by him), and all of them properly should have. The trial judge was dealing with the authenticity and integrity of oral testimony, and a trial judge has the primary responsibility to pass upon such evidence, after hearing the witnesses and observing their demeanor and actions while testifying. He has exercised that discretion, and has not abused it. We therefore affirm.

DUNIWAY, Circuit Judge (concurring).

I concur in the result, but for different reasons from those adopted by my brethren. I do not think that my brother Barnes' opinion satisfactorily distinguishes our holding in Costello v. United States, 9 Cir., 1962, 298 F.2d 99. First, the opinion states that reliability is in the mind of the police officer, so that cross-examination of the informer as to his own reliability would not be legally fruitful. This may or may not be so. The informer's story as to prior dealings by him with the officer might contradict the officer's story, thus destroying the officer's credibility in the eyes of the trier of fact. Moreover, knowledge of the informer's identity could make possible an effective cross-examination of the officer, which might well not be possible otherwise. Second, the opinion states that the informer's reliability can be confirmed by the subsequent occurrence of events predicted by him, as in Draper v. United States, 1958, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. There were such events in Costello, but, like the events occurring in the present case, they could have been observed by anyone, and give no reason to believe that the additional information, relating to the possession of marijuana, was reliable. In Costello, the record shows, although the opinion does not, that the informer told the officers that Costello would be at his place of business at a certain hour. He was there. Nevertheless, the reliability of the informer being in question, we required disclosure. Here, the informer said that a certain described car would cross the border. It did. I see no substantial difference between such circumstances and that involved in Costello.

I think, however, that there is a separate ground upon which the judgment should be affirmed—a ground that makes it unnecessary to decide whether Costello and the other cases cited in the opinion can be distinguished. Those cases did not involve a border search. This case does.

The majority opinion sets out the court's findings. I rest my concurrence on the trial court's conclusion "that the testimony of Mr. Parkerson disclosed * * * pursuit of the car * * *."

It has long been the law that special rules are applicable to a border search. As we said in Witt v. United States, 9 Cir., 1961, 287 F.2d 389 at 391:

"No question of whether there is probable cause for a search exists when the search is incidental to the crossing of an international border, for there is reason and probable cause to search every person entering the United States from a foreign country, by reason of such entry alone. That the customs authorities do *not* search every person crossing the border does not mean they have waived their right to do so, when they see fit. Here a precise description of the automobile in which appellant rode across the border (though not of its passengers) had been passed to the border guards as one being a possible bearer of heroin. This it was ultimately found to be. Mere suspicion has been held enough cause for a search at the border. Cervantes v. United States, 9 Cir., 1959, 263 F.2d 800, 803, note 5."

To the same effect, see Murgia v. United States, 9 Cir., 1960, 285 F.2d 14, 16–18.

The statutes, some of which are cited in the foregoing cases, support this view. 19 U.S.C. § 482 provides: "Any of the officers * * * authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle * * * on which * * * he or they shall suspect there is merchandise which * * * shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in or upon such vehicle * * * or otherwise, * * * and if any such officer * * * so authorized shall find any merchandise on or about any such vehicle * * * which he shall have reasonable cause to believe * * *

to have been unlawfully introduced into the United States, * * * he shall seize and secure the same for trial." Section 1581 of Title 19 provides: "(a) [a]ny officer of the customs may at any time go on board of any * * * vehicle at any place in the United States * * * without as well as within his district * * * and examine, inspect, and search the * * * vehicle and every part thereof * * * and to this end may hail and stop such * * * vehicle, and use all necessary force to compel compliance." Subdivision (d) requires the driver of such a vehicle, upon direction of such an officer, to come to a stop, and authorizes pursuit if he does not do so. Subdivision (e) directs seizure of the vehicle if it shall appear that a breach of the laws of the United States is being or has been committed so as to render the vehicle or the merchandise on board of, or brought into the United States by, such vehicle, liable to forfeiture. Subdivision (f) makes it the duty of the officer to effect the seizure.[1]

Under the foregoing authorities there can be no doubt that the right of the officers to stop and search the car at the border does not depend on whether the tip received by officer Parkerson was reliable. Indeed, he could have searched the car although he had no information whatever indicating that it might contain narcotics. We know, however, that the volume of traffic at the checkpoint at Tijuana is such that it is not physically possible for the officers to search every vehicle that there passes over the border of Mexico into this country. No doubt many searches result from tips similar to that here involved, and it is probable that by no means all of these tips come from informants theretofore found to be reliable. Does it make any difference here that the search occurred at the Oceanside checkpoint? I think that it does not.

It is not necessary to consider what the situation would be if there had been no desire or attempt on the part of the agents at the Tijuana border to stop and search the vehicle. See Cervantes v. United States, supra; Plazola v. United States, 9 Cir., 1961, 291 F.2d 56, 61 and Contreras v. United States, 9 Cir., 1961, 291 F.2d 63, 65. In Cervantes, supra, 263 F.2d 800 at p. 803 we pointed out that the defendant there was not stopped at the checkpoint in connection with a pursuit. In Plazola, supra, we simply cited Cervantes. In Contreras, supra, we again stated that there was no history of suspicious behavior at the border followed by surveillance or pursuit.

This case, I think, is different, and more closely resembles Murgia, supra. In Murgia, the defendant crossed the border on foot and was not there searched. However, he was followed, was seen to get into a car with a convicted narcotics violator, and was stopped about a mile and a half outside of Calexico. As we there said, "[n]o customs search can be made precisely at the border. All must be made somewhere north of the border between Mexico and the United States." We held that the search was a border search relying on the statutes cited above. I think that Murgia is controlling here. Appellant's car would have been searched at the border if it had not been for the fact that, by the time the tip was received and relayed to the officers on duty, appellant had already gone through the border checkpoint. An attempt at pursuit by car was made, unsuccessfully. Thereupon the pursuit was translated into pursuit by radio, with the request that the car be stopped at one of the two checkpoints, Oceanside or Temecula, and the actual stopping of the car was at the Oceanside checkpoint. It would be unduly restrictive of the idea of pursuit to require that the officers pursue the car in person. The use of the radio to alert the checkpoints amounts, in substance and I think in law, to the same thing.

1. Section 1357 of Title 8 U.S.Code authorizes the establishment of the Oceanside checkpoint, and we have upheld the validity of this statute and the regulation thereunder. (Fernandez v. United States, 9 Cir., 1963, 321 F.2d 283.) This statute and regulation, however, relate to aliens, not to imported goods or contraband.

It follows from the foregoing that when the officers stopped the car and searched it, they did not need to have probable cause; the search was legal without it. Hence, there is no need to require disclosure of the informant. One therefore need not decide whether, when the trunk of the car was opened and the officers saw a parcel of marijuana in the trunk, they then had probable cause to require that the parcel be opened. They would have had the right, without probable cause, to require that it be opened if they had discovered it at the border. They had the same right, under the peculiar circumstances of this case, when they discovered it at the checkpoint.