Ben Edward **ALEXANDER**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 20394.

United States Court of Appeals
Ninth Circuit.

June 7, 1966.

Rehearing Denied July 19, 1966.

**380**

Lawrence Ollason, Tucson, Ariz., for appellant.

Wm. P. Copple, U. S. Atty., Jo Ann D. Diamos, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before HAMLEY and DUNIWAY, Circuit Judges, and MATHES, Senior District Judge.

MATHES, Senior District Judge.

This appeal is from a judgment and sentence following a jury's verdict of guilty of an indictment charging the receipt and concealment, and facilitation of the transportation and concealment, in the District of Arizona, of a quantity of heroin, in violation of 21 U.S.C. § 174.

The evidence adduced at the trial disclosed that about 8:00 P.M., on August 24, 1964, a Customs Agent stationed at the Mexican border in Nogales, Arizona, observed appellant's accomplice, one Arnold, cross the border into the United States driving a 1961 blue Buick automobile bearing license number FCT–794. Arnold was alone at the time. Acting upon a "tip" from an informer, the Arnold vehicle was followed by Customs officers and, except for a few minutes when the car was temporarily lost from sight, this surveillance continued until Arnold parked on Morley Avenue in Nogales, Arizona. There Arnold left the car, walked across the street, and sat down in a nearby park.

About 8:30 P.M. that evening, appellant was observed crossing the Mexican border and entering the United States on foot. Appellant registered as a narcotic violator pursuant to 18 U.S.C. § 1407, as he had done upon entering Mexico earlier that day. He was followed by Customs officials from the border to a nearby bus station, and from there to Morley Avenue, where appellant crossed to the east side of the street and walked north. Arnold returned to his car and drove north, passed appellant, made a U-turn, passed appellant a second time, made another U-turn, and then stopped abreast of the appellant. Meanwhile, appellant had crossed back over to the west side of Morley Avenue, and now crossed once more and entered the right front seat of the vehicle.

Thereupon the car turned west on Highway 89, and was followed a short distance and then stopped and searched by Customs officials. Inside a toolbox in the locked trunk of the car, the officers found the heroin in question wrapped in lined tablet paper. Accomplice Arnold pleaded guilty. Appellant pleaded not guilty, and retained counsel who represented him at the trial.

Arnold testified as a witness for the prosecution at appellant's trial, and swore that he and appellant had jointly acquired the heroin in Mexico, where they had gone separately for that purpose; and that they then agreed for Arnold to transport the narcotics across the border in his automobile, and await appellant's arrival at a prearranged place in downtown Nogales, Arizona.

Appellant testified fully in his own defense, swearing in substance that he had no knowledge or possession or control of the heroin, or any interest whatever therein; that he did not know what Arnold had in the car. The jury obviously did not credit the direct evidence of ap-

pellant over that of Arnold plus the circumstantial evidence.

Upon this appeal appellant is represented by appointed counsel, who first urges as ground for reversal that there was an unreasonable search of the automobile and seizure of the heroin, since the Customs officers lacked a warrant of arrest, as well as probable cause to believe that the vehicle contained unlawfully imported merchandise, or that appellant or Arnold were committing or had committed a felony. It is argued that there was no evidence upon which to predicate probable cause other than the "tip" given to a Customs Agent by an informant, and that the District Court's failure to require the prosecution to identify or produce the informer at the trial made any statements by the informant unavailable as evidence of probable cause.

But this contention misses the mark. The informer's "tip" was only as to the identity of the automobile said to be carrying narcotics. There was no information as to the identity of the occupants of the car, other than that they were "two negro males". Moreover, the informant gave his information from the Mexican side of the border and at a time before the offense with which appellant was charged could have been committed in the District of Arizona.

Appellant's argument treats this case as the conventional one where probable cause is relied upon to make lawful an arrest without a warrant, and the search and seizure are urged to be "reasonable", within the meaning of the Fourth Amendment, as an incident to the prior lawful arrest. [See: Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed. 2d 142 (1964); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).] However, the question presented in the case at bar is the converse of the conventional. Here the arrest without a warrant is asserted to be law-law as an incident to a prior lawful search and seizure; the alleged lawful search and seizure, coupled with other antecedent and surrounding circumstances, are said to provide the probable cause which makes lawful appellant's subsequent arrest without a warrant.

Customs officers have long been given express authority to "stop, search, and examine, as well without as within their respective districts, any vehicle * * * or person, on which he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law." [19 U.S.C. § 482; see: Act of March 3, 1815, 3 Stat, 231, 232; Act of July 18, 1866, 14 Stat. 178.] Indeed, Customs officers are authorized "at any time to go on board * * * any * * * vehicle at any place in the United States * * * and search * * * the vehicle and every part thereof * * * and to this end may hail and stop such vehicle, and use all necessary force to compel compliance." [19 U.S.C. § 1581 (a); see Act of July 31, 1789, 1 Stat. 29, 43.]

Furthermore: "If upon the examination of any * * * vehicle it shall appear that a breach of the laws of the United States is being or has been committed so as to render such * * * vehicle, or the merchandise, or any part thereof, on board of, or brought into the United States by, such * * * vehicle, liable to forfeiture or to secure any fine or penalty, the same shall be seized and any person who has engaged in such breach shall be arrested." [19 U.S.C. § 1581(e).]

In conferring upon Customs officers such broad authority, circumscribed only by Constitutional limitations of the Fourth Amendment, the Congress has in effect declared that a search which would be "unreasonable" within the meaning of the Fourth Amendment, if conducted by police officers in the ordinary case, would be a reasonable search if conducted by Customs officials in lawful pursuit of unlawful imports. Judicial recognition

of this distinction has given rise to the term "border search", in order to distinguish official searches which are reasonable because made solely in the enforcement of Customs laws from other official searches made in connection with general law enforcement.

■■ Validity for this distinction is found in the fact that the primordial purpose of a search by Customs officers is not to apprehend persons, but to seize contraband property unlawfully imported or brought into the United States. [See The Atlantic, ⊍8 F.2d 8 (2d Cir. 1933).] Accordingly, it is well settled that a search by Customs officials of a vehicle, at the time and place of entering the jurisdiction of the United States, need not be based on probable cause; that "unsupported" or "mere" suspicion alone is sufficient to justify such a search for purposes of Customs law enforcement. [Cervantes v. United States, 263 F.2d 800, 803, n. 5 (9th Cir. 1959); see: Carroll v. United States, 267 U.S. 132, 154, 45 S. Ct. 280, 69 L.Ed. 543 (1925); Boyd v. United States, 116 U.S. 616, 623, 6 S.Ct. 524, 29 L.Ed. 746 (1886); Hammond v. United States, 356 F.2d 931 (9th Cir. 1966); King v. United States, 348 F.2d 814, 817 (9th Cir. 1965); Jones v. United States, 326 F.2d 124, 130 (9th Cir. 1964, concurring opinion of Judge Duniway); Denton v. United States, 310 F.2d 129 (9th Cir. 1962); Mansfield v. United States, 308 F.2d 221 (5th Cir. 1962); Plazola v. United States, 291 F.2d 56 (9th Cir. 1961); Witt v. United States, 287 F.2d 389 (9th Cir. 1961); Murgia v. United States, 285 F.2d 14 (9th Cir. 1960); Landau v. United States Attorney, 82 F.2d 285 (2nd Cir. 1936); United States v. Wischerth, 68 F.2d 161 (2nd Cir. 1933); United States v. Yee Ngee How, 105 F.Supp. 517 (N.D.Calif.1952).]

■ Where, however, a search for contraband by Customs officers is not made at or in the immediate vicinity of the point of international border crossing, the legality of the search must be tested by a determination whether the totality of the surrounding circumstances, including the time and distance elapsed as well as the manner and extent of surveillance, are such as to convince the fact finder with reasonable certainty that any contraband which might be found in or on the vehicle at the time of search was aboard the vehicle at the time of entry into the jurisdiction of the United States. Any search by Customs officials which meets this test is properly called a "border search". [See: Leeks v. United States, 356 F.2d 470 (9th Cir. 1966); King v. United States, supra, 348 F.2d 814; Marsh v. United States, 344 F. 2d 317 (5th Cir. 1965); Jones v. United States, supra, 326 F.2d at 130 (concurring opinion of Judge Duniway); Mansfield v. United States, supra, 308 F.2d 221; Cervantes v. United States, supra, 263 F.2d at 803, n. 5; Ramirez v. United States, 263 F.2d 385 (5th Cir. 1959); Bolger v. United States, 189 F.Supp. 237 (S.D.N.Y.1960), aff'd Bolger v. Cleary, 293 F.2d 368 (2nd Cir. 1961); United States v. Rodriquez, 195 F.Supp. 513 (S.D.Tex.1960), aff'd 292 F.2d 709 (5th Cir. 1961); United States v. Yee Ngee How, supra, 105 F.Supp. 517; People v. Furey, 42 Misc.2d 579, 248 N.Y.S.2d 460 (1962).]

■ It requires no discourse to convince that the work of Customs officials is made more effective by identification of the smugglers who bring in the contraband. To that end, it is not always advisable to make the search in the immediate vicinity of the point of border crossing. In the case at bar, the vehicle was placed under surveillance by Customs officers when it crossed the border and, except for a period of "possibly a minute to two minutes" when lost from view, was kept under constant watch as it made suspicious movements about the streets of Nogales, Arizona. Since the evidence discloses no reason to believe that there [was] any "change of condition of the auto from the time it crossed the border until it was stopped" [King v. United States, supra, 348 F.2d at 816], the fact that the vehicle was lost from view of the Customs officers for a brief period of

time does not alter the character of the search as a "border search". Consequently, both the search and seizure were "reasonable", and hence lawful.

 Appellant's arrest without a warrant followed this lawful search and seizure, and was incidental thereto. All circumstances considered, then, it is beyond question that there was ample probable cause to justify the arrest upon the theory that appellant and Arnold were confederates engaged in a common scheme and plan to bring narcotics into the United States contrary to law.

 Equally without merit is appellant's further argument that failure to identify or produce the informer at the trial constituted a denial of due process. The informant was admittedly neither a participant in, nor a witness to, the crime charged in the indictment, and of which appellant stands convicted. [See: Hammond v. United States, supra, 356 F.2d 931; Cook v. United States, 354 F.2d 529 (9th Cir. 1965); Hurst v. United States, 344 F.2d 327 (9th Cir. 1965); Jones v. United States, supra, 326 F.2d 124.]

 The only other issue raised by appellant here is as to the sufficiency of the evidence—especially of "possession." This issue was presented at the trial upon motion for "a directed verdict", which was treated as a motion for a judgment of acquittal under Rule 29(a) of the Federal Rules of Criminal Procedure. In ruling upon this motion, the trial court found, and we agree, that the evidence was sufficient to sustain a finding by the jury that appellant and Arnold were in joint constructive possession of the heroin involved, at least from the time that appellant entered the car in downtown Nogales until it was stopped for search on Highway 89. [See: Figueroa v. United States, 352 F.2d 587 (9th Cir. 1965); Arellanes v. United States, 302 F.2d 603, 606–607 (9th Cir. 1962).]

Appellant was fairly tried, and fairly convicted.

The judgment of the District Court is affirmed.