David **THOMAS**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 23264.

United States Court of Appeals
Fifth Circuit.

Feb. 13, 1967.

---

J. F. Hulse, Barney Oden, Jr., El Paso, Tex., for appellant.

Mario J. Martinez, El Paso, Tex., Ernest Morgan, U. S. Atty., San Antonio, Tex., for appellee.

Before HUTCHESON, WISDOM and BELL, Circuit Judges.

HUTCHESON, Circuit Judge:

Appellant Thomas was convicted of importation and concealment of heroin and marihuana, and failure to pay a transfer tax on the marihuana. See 21 U.S.C. §§ 174, 176a; 26 U.S.C. § 4744 (1). His motion to suppress evidence on the ground that it was obtained by an unreasonable search was denied, the District Court for the Western District of Texas holding that customs agents were acting within the scope of their authority to conduct a border search. We affirm.

On August 4, 1965, customs authorities in El Paso received a tip from an informer that a certain person, who was described in detail,[1] was attempting to purchase narcotics in Mexico. The informer said further that the person was staying at the Chief Hotel in El Paso. The description fit appellant who registered at the Chief Hotel. The informer was known to be reliable in that his former tips had led to numerous seizures and successful prosecutions; the identity of the informer, however, remained undisclosed in the trial.

Pursuant to this information, appellant's hotel was placed under surveillance at 1:15 a. m. on August 5, 1965. The next morning customs agent Adams followed by car as appellant left the hotel. Appellant proceeded by streetcar across the border into Juarez, Mexico, at 10:30 a. m. When appellant departed from the streetcar in Juarez, he happened to cross in front of the agent's car. The agent, fearing he had been seen and recognized, abruptly discontinued the surveillance and returned to El Paso, leaving appellant behind in Juarez. Upon re-entering the United States, the agent did not inform customs authorities at the several border inspection stations of any suspicions he had concerning appellant.[2] Upon subsequently re-entering the United States by streetcar, appellant passed through an inspection station but was not apprehended. He made purchases at one shop in El Paso, checked his ticket reservations at the bus depot, and began to return to his hotel. Customs agents stopped and searched him[3] at 12:15 p. m. within visual distance of the border, which was only six blocks away. The agents had neither an arrest warrant nor a search warrant. Appellant was carrying two shopping bags of

---

1. The informer described a Negro male about 5′6″ in height, medium build, with a mustache, wearing a green shirt, a small beany-type cap, and dark trousers.

2. Agent Adams stated as his reason for not alerting the customs agents at the inspection station:

 [T]he information Mr. Riggs had related to me was that this man was trying to purchase a quantity of narcotics, and I had no idea whether he would purchase them and carry them back, or just how he operated, this was a matter of surveillance.

3. With respect to the reasons for the later search, Agent Adams stated:

 Well, I felt that the movements he had made coincided with the information I had received, that he might possibly have received a delivery or carried or purchased the narcotics and gotten them back, he was carrying some items in his hand, and I felt that I had reasonable grounds then to stop him under the Customs search power.

the type frequently used by tourists in the area. The two bags were searched for contraband, undeclared items, or duty items on which duty had not been paid; the bags contained both heroin and marijuana. Prior to the trial, appellant moved to suppress the evidence obtained by the search on the ground that the search was unreasonable. The district court sustained the search by holding that it qualified as a border search pursuant to 19 U.S.C. § 482. Appellant also raises a question with regard to the charge to the jury.

 Customs agents are authorized by 19 U.S.C. § 482 to stop and search any person they suspect is carrying merchandise unlawfully imported into the United States and to seize any merchandise which they "shall have reasonable cause to suspect * * * to have been unlawfully introduced into the United States." Such a search, known as a border search, is in a separate category from searches generally because it may be predicated upon suspicion; neither a search warrant nor probable cause to believe the person has committed a crime is required. Valadez v. United States, 358 F.2d 721, 722 (5th Cir. 1966) (per curiam); Mansfield v. United States, 308 F.2d 221, 222 (5th Cir. 1962). This does not, of course, exempt border searches from the constitutional test of reasonableness. Marsh v. United States, 344 F.2d 317, 324 (5th Cir. 1965). "In conferring upon Customs officers such broad authority, * * * the Congress has in effect declared that a search which would be 'unreasonable' within the meaning of the Fourth Amendment, if conducted by police officers in the ordinary case, would be a reasonable search if conducted by Customs officials in lawful pursuit of unlawful imports." Alexander v. United States, 362 F.2d 379, 381 (9th Cir. 1966). This special treatment is based on policy considerations which recognize the difficult problems of effectively policing our national boundaries.[4] King v. United States, 348 F.2d 814, 818 (9th Cir)., cert. denied, 382 U.S. 926, 86 S.Ct. 314, 15 L.Ed.2d 339 (1965). See generally Comment, 115 U. Pa.L.Rev. 276 (1966).

At the same time, we note there must come a point when a traveler's entry into this country is complete so that the protection of the Fourth Amendment attaches to him. Then he is "entitled to * * * have a right to free passage without interruption of search unless there is known to a competent official, authorized to search," probable cause for believing that the traveler is carrying contraband or illegal merchandise. Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct. 280, 285 (1925). In short, the traveler no longer may be the subject of a border search based on suspicion. We recently observed in Marsh v. United States, supra 344 F.2d at 325, that "any other doctrine would render travelers who had recently entered this country subject to almost unlimited arrest and search without any cause save the simple request of a border officer to one at an interior point."

 Appellant insists that his entry was complete prior to the search discovering the narcotics in his shopping bags. When he re-entered the United States on a streetcar passing through the customs inspection station, appellant presumably was examined as casually as any tourist[5] since the customs officers

4. It is common knowledge that large quantities of narcotics are smuggled across the Mexican border daily. See United States v. Rodriguez, 195 F.Supp. 513, 516 (S.D.Tex.1960), aff'd 292 F.2d 709 (5th Cir. 1961). Moreover, the Supreme Court said in Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925) that travelers may be stopped and searched "in crossing an international boundary because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in."

5. The record shows only that appellant traversed the border on a streetcar which passes by a customs inspection station. There was no testimony showing that appellant was searched or, if he was, how thoroughly. Thus it appears that he was treated the same as any tourist.

at the inspection station were not alerted that appellant was suspected of importing narcotics. No narcotics were uncovered at that time. But since appellant was searched within a period of one and one-half hours at most after his return to the United States and within a distance of six blocks from the border, the time and distance factors suggest the search qualifies as a border search. See Valadez v. United States, supra; Alexander v. United States, supra, 362 F.2d at 382. Appellant argues, however, that his entry was complete once he passed through the inspection station because (a) he apparently was examined in some fashion at the inspection station and (b) the customs agents who had placed him under surveillance chose not to attempt to search him thoroughly as he passed through the inspection station but instead waited until he approached his hotel. We cannot agree. It is true that appellant did not flee or react in any other unusual manner which would provide probable cause for the search. See Ramirez v. United States, 263 F.2d 385, 387 (5th Cir. 1959) (per curiam). But a suspect is not always immune from further examination by customs agents merely because he "may momentarily escape detection and pass safely through the first Custom's check." United States v. Rodriguez, 195 F.Supp. 513, 516 (S.D.Tex.1960), aff'd, 292 F.2d 709 (5th Cir. 1961). Under the circumstances of this case, we hold that the examination at the border line did not in and of itself preclude further use of

a border search.[6] Thus it was not error for the court below to deny the motion to suppress evidence obtained by the search.[7]

The case before us is distinguishable from Marsh v. United States, supra, where the government failed to show *any* circumstances known to the officers for a search 63 miles from the border; here the agents had ample reason to suspect appellant and the search took place in the immediate vicinity of the border.

■ The district court charged the jury pursuant to 21 U.S.C. § 174 which provides in pertinent part:

> Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

Appellant complains that the charge violated his rights protected by the Fifth Amendment since it shifted the burden of proof and required him to explain the possession, thus forcing him to be a witness in his own behalf. The constitutionality of this presumption has been consistently upheld. See Borne v. United States, 332 F.2d 565 (5th Cir. 1964) (per curiam); Manning v. United States, 274 F.2d 926, 930 (5th Cir. 1960).

The judgment of the district court therefore is

Affirmed.

---

6. In Jones v. United States, 326 F.2d 124, 125 (9th Cir. 1963), cert. denied, 377 U.S. 956, 84 S.Ct. 1635, 12 L.Ed.2d 499 (1964), "the agent on duty at the border looked into the car with his flashlight, but did not open the trunk;" yet the concurring opinion indicates that a later search 67 miles from the border discovering narcotics in the trunk of the car could qualify as a border search. In Murgia v. United States, 285 F.2d 14, 16 (9th Cir. 1960), it was noted that "no

real search" of Murgia was made when he first crossed the border line even though he had registered as a narcotics addict. But see Cervantes v. United States, 263 F.2d 800, 803 n. 5 (9th Cir. 1959).

7. Since the validity of the border search did not depend on the reliability of the informer's tip, the identity of the informer need not have been disclosed. See Hammond v. United States, 356 F.2d 931, 932 (9th Cir. 1966).