**UNITED STATES of America,**
**Plaintiff,**

v.

**Barney BECKER et al., Defendants.**

**Crim. A. No. 71–64.**

United States District Court,
D. Massachusetts.

Sept. 11, 1972.

Frederic R. Kellogg, Asst. U. S. Atty., for United States.

Robert M. Rosenblum, Philadelphia, Pa., for Barney F. Becker.

George E. Goldstein, Philadelphia, Pa., for Donna Becker.

Richard L. Zisson, Boston, Mass., for Charles K. Jones.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO SUPPRESS

JULIAN, Senior District Judge.

This case is before the Court on the motion to suppress of defendants Barney Becker and Donna Becker. Defendants seek to suppress as evidence hashish found in certain baggage by agents of the Bureau of Customs as a result of warrantless searches. Defendants were arrested at Logan International Airport on January 12, 1971, after claiming six suitcases within which false bottoms concealed various amounts of hashish. The indictment charges violations of 21 U.S.C. § 176a.[1]

The Court held an evidentiary hearing on April 3, 1972. The following facts appeared without dispute.

On or about December 26, 1970, six suitcases consigned to Donna Stevens, Frank Becker, and Jay Pinsky at 126 Amory Street, Brookline, Mass., arrived in New York from Karachi, Pakistan.[2] From New York, the baggage was forwarded by Northeast Airlines to Boston, arriving at Logan International Airport on January 5, 1971. On that date, Special Agent Haig Soghigian, who testified at the evidentiary hearing, opened and examined the interior of one of the six suitcases, finding hashish secreted beneath a false bottom. The search was conducted without a warrant. Each suitcase remained in the custody and control of the Bureau of Customs until January 12, 1971, when Barney Becker, accompanied by Donna Becker, arrived at the Northeast Airlines cargo area to claim the baggage. At that time Barney

---

1. Since repealed. Act of Oct. 27, 1970, Pub.L. No. 91–153, § 1101(a)(2), 84 Stat. 1291.

2. Government's Exh. B.

Becker presented an air waybill denoting Barney Becker as the shipper of the baggage. Upon receiving the six suitcases, Barney Becker, Donna Becker, and Charles K. Jones, another defendant, placed them in a rented car and proceeded to depart the area, whereupon agents of the Bureau of Customs stopped them and effected the arrest of all three defendants. Customs agents then removed the baggage to the United States Customs House in Boston for a complete search in the presence of the three defendants. Each defendant was advised of his constitutional rights, as prescribed by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The search disclosed various quantities of hashish hidden beneath a false bottom in each of the six suitcases, totaling 41.5 pounds.

■ Defendants Barney and Donna Becker contend that, even though the two searches were conducted by Customs Agents and are properly characterized as "border searches,"[3] their Fourth Amendment protection against unreasonable searches and seizures would be defeated by the admission in evidence of the seized contraband at trial. Defendants argue, first, that there was ample time between December 26, 1970, when the baggage arrived in New York, and January 12, 1971, when defendants claimed the baggage in Boston, within which to secure a search warrant; "[f]or this reason alone, it is submitted that the warrantless search and seizure

should fall as it was unreasonable." (Brief of Defendants in Support of Motion to Suppress, at 5.) Defendants contend that an "even more compelling" reason to suppress the hashish as evidence is that Agent Soghigian, according to his own testimony, received word by telephone from a Customs agent in New York, one Special Agent Milano, who informed him that the six suitcases had arrived in New York, described them by color, named the consignees, further stated that agents of the Bureau of Narcotics and Dangerous Drugs had told him (Agent Milano) that they suspected that the suitcases contained hashish, and said that the baggage would be shipped to Boston for examination. Agent Soghigian further testified that he learned from Agent Milano that a confidential informant had provided information upon which the official suspicions were based. The Government neither disclosed the identity nor established the reliability of the informer. On these facts, defendants contend, the Customs agents, specifically Agent Soghigian, lacked a sufficient basis upon which to conduct a more than cursory inspection, examination, or search of the suitcases in Boston.

■ Neither argument—that the agents were obligated to obtain a search warrant and that they lacked "a reasonable cause to suspect" that the suitcases contained "merchandise which was imported contrary to law," as required by 19 U.S.C. § 482[4]—finds support in the

3. See Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); United States v. Stornini, 443 F.2d 833 (1 Cir.), cert. denied, 404 U.S. 861, 92 S.Ct. 162, 30 L.Ed.2d 104 (1971); United States v. Glaziou, 402 F.2d 8 (2 Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969); Alexander v. United States, 362 F.2d 379 (9 Cir.), cert. denied, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966); Cervantes v. United States, 263 F.2d 800 (9 Cir. 1959).

The fact that the suitcases were opened and examined in Boston, after transfer from New York, the "first U.S. port of unlading" (see Government's Exh. B, entitled "Transportation Entry and Mani-

fest of Goods Subject to Customs Inspection and Permit"), in no way alters the character of the search as a "border search." See, e. g., Alexander v. United States, supra, 362 F.2d at 382–383. There is no evidence of any change in the condition of the suitcases from the time of their entry in New York for transportation in bond without appraisement, a procedure authorized by 19 U.S.C. § 1552, and the time of their arrival and search in Boston. See King v. United States, 348 F.2d 814, 816 (9 Cir.), cert. denied, 382 U.S. 926, 86 S.Ct. 314, 15 L.Ed.2d 339 (1965).

4. 19 U.S.C. § 482 provides:
"Any of the officers or persons authorized to board or search vessels may

decisional law relating to "border searches" conducted by agents of the Bureau of Customs. As has been so often stated by other courts, border searches fall within a category distinct from other searches and seizures, and neither a search warrant nor probable cause is required to establish their legality. *See, e. g.,* Walker v. United States, 404 F.2d 900 (5 Cir., 1958); United States v. Glaziou, 402 F.2d 8 (2 Cir., 1968), cert. denied, 393 U.S. 1121, 89 S. Ct. 999, 22 L.Ed.2d 126 (1969); Morales v. United States, 378 F.2d 187 (5 Cir., 1967); Rodriguez-Gonzalez v. United States, 378 F.2d 256 (9 Cir., 1967); King v. United States, 348 F.2d 814 (9 Cir.), cert. denied, 382 U.S. 926, 86 S.Ct. 314, 15 L.Ed.2d 339 (1965).[5]

■ An individual's baggage may be searched in a reasonable manner by a Customs officer acting upon subjective suspicion alone, or even on a random basis. United States v. Stornini, 443 F. 2d 833 (1 Cir.), cert. denied, 404 U.S. 861, 92 S.Ct. 162, 30 L.Ed.2d 104 (1971); Landau v. United States Attor-

ney, 82 F.2d 285 (2 Cir., 1936). Mere, unsupported suspicion alone is sufficient to justify a border search. See Alexander v. United States, 362 F.2d 379 (9 Cir.), cert. denied, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966), and cases cited.

■ Therefore, the Government need not—as it did not here—identify the informer or establish his reliability. Stassi v. United States, 410 F.2d 946 (5 Cir., 1969); Hammond v. United States, 356 F.2d 931 (9 Cir., 1966).

■ On the basis of the evidence received at the hearing of April 3, 1972, and the arguments and briefs of counsel, the Court finds and rules that Agent Soghigian did have "reasonable cause to suspect," within the meaning of 19 U.S. C. § 482 and decided cases, that the six suitcases contained hashish. The Court further finds and rules that the warrantless searches in this case were reasonable in all respects.

Accordingly, it is ordered that defendants' motion to suppress be, and it is hereby, denied.

stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise which was imported contrary to law; and if any such officer or other person so authorized shall find any merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial. R.S. § 3061."

Another statutory source of Customs officers' authority to search baggage entering the country is 19 U.S.C. § 1467, which provides:

"Whenever a vessel from a foreign port or place or from a port or place in any Territory or possession of the United States arrives at a port or place in the United States or the Virgin Islands, whether directly or via another port or place in the United States or the Virgin Islands, the appropriate customs officer for such port or place of arrival may, under such regulations as the Secretary of the Treasury may prescribe and for the purpose of assuring compliance with any law, regulation, or instruction which the Secretary of the Treasury or the Customs Service is authorized to enforce, cause inspection, examination, and search to be made of the persons, baggage, and merchandise discharged or unladen from such vessel, whether or not any or all such persons, baggage, or merchandise has previously been inspected, examined, or searched by officers of the customs."

5. This Court, too, has so stated in United States v. Berard, 281 F.Supp. 328 (D. Mass., 1968), and in United States v. O'Brien, 265 F.Supp. 953 (D.Mass., 1967).