**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Rigoberto Segundo Pineda MEJIAS, Defendant-Appellant.**

**No. 26579.**

United States Court of Appeals, Ninth Circuit.

Dec. 21, 1971.

**1192**

Carl E. Stewart (argued), Hollywood, Cal., for defendant-appellant.

Jonathan Rapore, Asst. U. S. Atty. (argued), Robert L. Meyer, U. S. Atty., David R. Nissen, Chief, Crim. Div., George G. Rayborn, Asst U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HAMLEY, BROWNING and TRASK, Circuit Judges.

TRASK, Circuit Judge:

The appellant, Rigoberto Pineda Mejias, was found guilty following a jury trial in the district court on a one count indictment charging him with a violation of 21 U.S.C. § 174 (Concealed Importation of Cocaine). This court's jurisdiction to review the conviction rests on 28 U.S.C. § 1291. We have reviewed the entire proceeding and affirm the judgment of the trial court.

The appellant, a Chilean national, arrived at Los Angeles International Airport on a flight originating in Argentina. Los Angeles was the flight's first stop within the United States. His baggage was inspected and he passed through customs. A short time thereafter, another Chilean passenger on the same flight was arrested for attempting to conceal contraband, later ascertained to be five pounds of cocaine.

An airline employee, who had seen appellant arrive on the flight from South America and pass through customs, observed the appellant, about an hour after the flight's arrival, pacing and nervously looking toward the customs area.

Knowing that a passenger from Chile had been taken into custody, the employee then examined the passenger manifest and noted that the only two passengers from Chile had pooled their luggage together at the point of entry onto the plane and their luggage was being transported under one baggage claim tag. Calling the customs agents to the airline office, the employee pointed out the appellant to the agents, who did not themselves examine the manifest, and did not know appellant's name when they finally approached to question him.

Upon the request of the customs agents, appellant produced his passport and airline ticket. He denied being on the incoming flight from South America, and indicated that his luggage was at the baggage claim area. The agent found none of appellant's luggage at the claim area and were then informed by the airline employee that the suitcase which the employee had seen appellant carrying earlier was on the sidewalk. Upon reaching the suitcase, appellant denied that it belonged to him. The suitcase was moved into the light of the lobby, where the airline employee pointed out that there was a name on the baggage claim tag attached to the suitcase. The agents read the name and the appellant acknowledged that it was his name. After agents compared the name on the tag with that on the passport, they took appellant to the customs room where the suitcase was searched and 4.6 pounds of cocaine were found sewn into the lining.

 The government contends that the search of appellant's suitcase was a border search authorized under 19 U.S. C. § 482, which may be conducted on mere suspicion. Carroll v. United States, 267 U.S. 132, 154, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Alexander v. United States, 362 F.2d 379 (9th Cir.), cert. denied, 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966). We agree. The search in this case was conducted in the immediate vicinity of the customs through which appellant had previously

passed.[1] Although the lapse of an hour and a half between the first and second search would not necessarily exclude the second search from the literal meaning of the phrase "border search," we recognize that the time factor cannot be ignored.

However, we need not define the scope of that literal meaning as we find that the second search qualifies as a border search under the test of Alexander v. United States, *supra*, which states that:

"[T]he legality of the search must be tested by a determination whether the totality of the surrounding circumstances, including the time and distance elapsed as well as the manner and extent of surveillance, are such as to convince the fact finder with reasonable certainty that any contraband which might be found in or on the vehicle at the time of search was aboard the vehicle at the time of entry into the jurisdiction of the United States." 362 F.2d at 382.[2]

The appellant in this case was seen coming through customs by an airline employee. During the following hour that employee saw appellant on two different occasions carrying the suitcase which was eventually searched. The baggage claim tag attached to the suitcase indicated that the bag had come in on the same flight on which appellant had arrived, and that it had been checked in under appellant's name. The cocaine which was finally seized was found sewn into the lining of appellant's suitcase. These circumstances, including the fact that the second search occurred in the immediate vicinity of the first search, are such as to convince the fact finder with reasonable certainty that any contraband which might be found in the suitcase at the time of the search was in that suitcase at the time of entry into the United States.

■ Appellant contends that a second search following the initial border search cannot also be characterized as a border search unless the subject of the search has been under continuous surveillance during the interim. However, we have previously sustained the validity of border searches conducted away from the actual border in spite of substantial lapses in surveillance. *See e. g.*, United States v. Markham, 440 F.2d 1119 (9th Cir. 1971); United States v. Weil, 432 F.2d 1320 (9th Cir. 1970), cert denied, 401 U.S. 947, 91 S.Ct. 933, 28 L. Ed.2d 230 (1971); United States v. Mahoney, 427 F.2d 658 (9th Cir.), cert. denied, 400 U.S. 849, 91 S.Ct. 49, 27 L.Ed. 2d 87 (1970); Leeks v. United States, 356 F.2d 470 (9th Cir. 1966).[3]

1. The term "border" logically includes the check point at the port of entry as well as a reasonable extended geographic area in the immediate vicinity of any entry point. United States v. Glaziou, 402 F. 2d 8, 12–13 (2d Cir. 1968), cert. denied, 393 U.S. 1121, 89 S.Ct. 999, 22 L.Ed.2d 126 (1969).

2. The *Alexander* test is framed in terms of a vehicle crossing a border. The present case involves an individual who passes through customs carrying a suitcase. In spite of this factual variation, the cases are analogous as the contention of the government in both was that the carrier of the contraband when seized was the same carrier that introduced the contraband into the United States.

3. Although this court adopted a variation on the *Alexander* test in United States v. Weil, 432 F.2d 1320 (9th Cir. 1970), cert. denied, 401 U.S. 947, 91 S.Ct. 933, 28

L.Ed.2d 230 (1971), recognizing that the facts to which the *Alexander* test addressed itself differed from the facts in *Weil*, surveillance fills similar functions under both tests. The test in *Weil*, followed in United States v. Markham, 440 F.2d 119 (9th Cir. 1971), is that:

"[I]f customs agents are reasonably certain that parcels have been (a) smuggled across the border and (b) placed in a vehicle, whether the vehicle has itself crossed the border or not, they may stop and search the vehicle." 432 F.2d at 1323.

The common purpose of the *Alexander* and *Weil* tests is to insure that searches based on mere suspicion be conducted with the primary purpose of seizing contraband property unlawfully imported or brought into the United States. Under both tests, surveillance is an important means of establishing with reasonable certainty that goods discovered upon

■ There is another ground, aside from the characterization of this search as a border search, upon which to uphold this search. When appellant's suitcase was searched, the customs officers knew that the only other Chilean passenger on the same flight had been arrested for carrying contraband, that the appellant and the other Chilean passenger had pooled their baggage, that appellant had been seen pacing nervously and looking toward customs as though waiting for someone, that he lied about the flight on which he arrived and had denied possession of the suitcase which he had been carrying and exhibited his name. These circumstances would warrant a man of reasonable caution in believing that appellant had merchandise subject to duty, or introduced into the United States unlawfully. Probable cause existed for the search. United States v. Cleaver, 402 F.2d 148 (9th Cir. 1968), cert. denied, 394 U.S. 966, 89 S.Ct. 1312, 22 L.Ed.2d 568 (1969).

■ Appellant challenges the admission of the baggage tag as hearsay. We find that the tag was part of the suitcase and admissible as proof of appellant's ownership of the suitcase. *See* Callas v. Independent Taxi Owner's Ass'n, 62 U.S.App.D.C. 212, 66 F.2d 192 (1933).

■ His final contention is that the trial judge abused his discretion by imposing an excessive sentence. The defendant was twenty-five years old with no prior record. He was married and had two small children. He was sentenced to the custody of the Attorney General for a term of ten years.[4] There appear to be no circumstances such as

those outlined in United States v. Weston, 448 F.2d 626 (9th Cir. 1971) which would take this case from the settled rule that appellate courts will not change a sentence which falls within the limits of the statute. Gebhard v. United States, 422 F.2d 281, 284 (9th Cir. 1970).

The judgment is affirmed.

---

search of the person were goods under his control when he entered the United States.

Thus, surveillance is one circumstance which provides the requisite reasonable certainty. However, there need not be continuous surveillance where other circumstances, as are present in this case, provide the fact finder with the reasonable certainty required by the applicable test.

4. 21 U.S.C. § 174 provides that whoever violates the section "shall be imprisoned not less than five or more than twenty years. . . ."