UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard P. GOLDEN,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Martin H. TROWERY,
Defendant-Appellant.

Nos. 75–1236, 75–1315.

United States Court of Appeals,
Ninth Circuit.

March 16, 1976.

Rehearing Denied April 5, 1976.

---

Steven W. Parnes (argued), of Mazer & Parnes, San Francisco, Cal., for defendants-appellants.

**1246**

Paul J. Fitzpatrick, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

OPINION

Before BROWNING and SNEED, Circuit Judges, and SMITH,* District Judge.

PER CURIAM:

Golden and Trowery appeal convictions for unlawful importation of heroin in violation of 21 U.S.C. §§ 952, 960; for possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); and for conspiracy to distribute, to possess with intent to distribute, and to unlawfully import heroin in violation of 21 U.S.C. §§ 846, 963.

Appellants arrived at San Francisco International Airport on a flight from Tokyo, Japan. Golden passed through United States Customs without incident. However, Trowery was arrested when a Customs inspector found a white, powdery substance later determined to contain heroin under false bottoms in Trowery's two black vinyl bags.

Golden returned to the general Customs area about ten minutes after clearing Customs. He told a Customs employee he was waiting for his "traveling companion," a Mr. Trowery. He said he and Trowery had just arrived from Bangkok, Thailand, and were traveling together to Pittsburgh. The inspector who had passed Golden through Customs remembered that Golden had two black vinyl bags similar to Trowery's. Golden was taken to an interview room. He told Customs agents he had just returned from a vacation in Bangkok, but also said he had been unemployed for two years. His passport indicated he had returned from another trip to Bangkok three weeks earlier. He said claim checks found in his possession were for his bags, which he had checked to Washington, D. C. A Customs inspector retrieved the bags and Golden acknowledged they were his. A substance later determined to contain heroin was found under a false bottom in each bag. Golden was arrested and advised of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

1. Golden claims he was entitled to *Miranda* warnings when taken from the general Customs area to the interview room, or at least when the agents learned of his previous trip to Bangkok. He further argues that the search of his bags was illegal because it was not a proper border search and the agents lacked probable cause.

We held in *Chavez-Martinez v. United States,* 407 F.2d 535, 539 (9th Cir. 1969), "that the warning required in *Miranda* need not be given to one who is entering the United States unless and until the questioning agents have probable cause to believe that the person questioned has committed an offense, or the person questioned has been arrested . . . ." The agents lacked probable cause to arrest Golden until the heroin was discovered. Golden was asked where he had visited, what his occupation was, and whether the bags were his. These "were routine inquiries of one returning to the United States and are clearly permissible under the *Chavez-Martinez* rule." *United States v. Sosa,* 469 F.2d 271, 273 (9th Cir. 1972).

The search of Golden's bags was a proper border search. *United States v. Mejias,* 452 F.2d 1190 (9th Cir. 1971). In this case, as in *Mejias,* the circumstances were sufficient to show "with reasonable certainty that any contraband which might be found in the suitcase at the time of the search was in that suitcase at the time of entry into the United States." *Id.* at 1193; *see Alexander v. United States,* 362 F.2d 379, 382 (9th Cir. 1966). As in *Mejias,* the time that elapsed between the two searches and the lack of continuous surveillance do not disqualify the second search as a border search. The search was conducted in the

---

* Honorable Russell E. Smith, United States District Judge, District of Montana, sitting by designation.

Customs area. Golden had identified the bags as his. He had offered them for Customs inspection a short time before. Although the bags had been out of Golden's possession, he said he had checked them with airline baggage personnel, who were unlikely to have tampered with them. The agents knew he had been traveling with Trowery, whose identical bags had ,contained contraband.

■ 2. Appellants contend it was reversible error for the trial court to refuse to ask prospective jurors certain questions during voir dire requested by appellants for the purpose of determining whether as jurors they would give undue weight to the testimony of law enforcement officers, *citing Brown v. United States,* 119 U.S.App. D.C. 203, 338 F.2d 543, 544–45 (1964), and *Sellers v. United States,* 106 U.S.App.D.C. 209, 271 F.2d 475 (1959). The district court's refusal was not an abuse of its broad discretion. *United States v. Heck,* 499 F.2d 778, 790 (9th Cir. 1974); *United States v. Holley,* 493 F.2d 581, 584 (9th Cir. 1974). The district court asked several questions regarding the associations of prospective jurors with law enforcement activities, and individually questioned any juror who had had such an association. *See United States v. Urbanis,* 490 F.2d 384, 385 (9th Cir. 1974); *United States v. Gassaway,* 456 F.2d 624, 625–26 (5th Cir. 1972). There was no conflict between the testimony of official and lay witnesses, and the credibility of law enforcement and Customs personnel who testified was not seriously questioned. *See United States v. McGregor,* 529 F.2d 928, 931 (9th Cir., 1976). The key issue for the jury was whether appellants had knowledge of the existence of contraband in their suitcases. All of the government's evidence of knowledge was circumstantial, and "related to objective circumstances not really in dispute." *United States v. Gutierrez-Espinosa,* 516 F.2d 249, 250 (9th Cir. 1975).

■ Nor did the district court abuse its discretion by ˙refusing to ask prospective jurors whether they would disbelieve the testimony of a person who had been previously convicted of a crime. The district court ruled that use of prior crimes for impeachment purposes was a matter to be covered by the instructions, and asked all of the prospective jurors whether they would "be able to follow the law as I set it forth for you, in fairly trying this case?" As it developed, no witness with a prior conviction testified and the issue therefore did not arise.

■ 3. Trowery contends that the court erred in failing to rule whether, if Trowery testified in his own behalf, the court would allow the government to impeach his testimony by introducing evidence of a prior felony conviction. It is clear from the record that the court declined to rule only because it was not told what Trowery's testimony would be. This information was necessary to permit the court to determine, as the court said, "what relevancy the offense might have to the testimony that he does give." Even under the rule most favorable to Trowery, the burden of showing that relevancy is outweighed by prejudice rests on the defendant. *Gordon v. United States,* 383 F.2d 936, 939–40 (D.C.Cir. 1967).

■ 4. Appellants argue that it was error to allow a Drug Enforcement Administration special agent to testify as an expert witness that the market price of the amount of heroin discovered in appellants' bags was approximately $5,000 in Bangkok, $450,000 on the East Coast of the United States, and $936,000 on the West Coast. The value of the heroin found in the bags was relevant to both appellants' knowledge of the presence of the heroin, *see United States v. Hernandez-Valenzuela,* 431 F.2d 707 (9th Cir. 1970); *Gaylor v. United States,* 426 F.2d 233, 235 (9th Cir. 1969), and intent to distribute, *United States v. Gutierrez-Espinosa, supra,* 516 F.2d at 250. The trial court did not abuse its discretion in permitting the witness to testify as an expert. *Ignacio v. Guam,* 413 F.2d 513, 520 (9th Cir. 1969). The agent had eleven years' experience in undercover narcotic activity; he had purchased heroin more than 400 times in the United States, Europe, and Asia (including Thailand); he had purchased heroin

in Bangkok in 1967 and had recently obtained information as to prices in Thailand from another agent; in the months prior to the trial he had made purchases in Washington, D.C., and Detroit; and on thirteen other occasions had testified as an expert witness on the market value of heroin. The agent's opinion was not inadmissible because it was based in part on information obtained from other undercover narcotics agents familiar with the markets involved; such information was of the type reasonably relied upon by experts determining prevailing prices in clandestine markets. *See United States v. Smith,* 519 F.2d 516, 521 (9th Cir. 1975); *United States v. Sims,* 514 F.2d 147, 149 (9th Cir. 1975); Rule 703, Federal Rules of Evidence (not controlling at the time of trial in this case).

5. Appellants' claim that the special parole term provisions of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 841 *et seq.,* are unconstitutional was not raised below and will not be heard for the first time on appeal.

Affirmed.