8 F.3d 31
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ralf FLEISCHHAUER, Defendant-Appellant.
 No. 92-50183.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 10, 1993.
Decided Oct. 6, 1993.
 
 Before: FLETCHER, POOLE and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Ralf Fleischhauer appeals four narcotics convictions for importation and possession of heroin, and for conspiracy. We now affirm.
 
 I.
 
 3
 Fleischhauer argues that his arrest, and the agents' subsequent search of his folder and suitcase, were unlawful.
 
 
 4
 The district court's denial of Fleischhauer's motion to suppress is reviewed de novo. United States v. Johnson, 990 F.2d 1129, 1132 (9th Cir.1990). We rely on that court's factual findings unless they are clearly erroneous. Id. The evidence as a whole is viewed in the light most favorable to the district court's decision. United States v. Childs, 944 F.2d 491, 492 (9th Cir.1991).
 
 A. The Arrest
 
 5
 The customs agents in this case clearly had probable cause to arrest Fleischhauer. Probable cause to arrest exists when "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person to believe a suspect has committed, is committing, or is about to commit a crime." United States v. Hoyos, 892 F.2d 1387, 1392 (9th Cir.1989), cert. denied, 498 U.S. 825 (1990).
 
 
 6
 Many facts established probable cause. The district court found that Cheatham-Watkins told the customs officials that the heroin belonged to Fleischhauer, mentioning him by name. The court found that Cheatham-Watkins had papers in her suitcase bearing Fleischhauer's name, even though she and Fleischhauer had said they were traveling alone. The court further found that both Cheatham-Watkins and Fleischhauer were traveling to Houston; and that Fleischhauer fit the description Cheatham-Watkins gave to the customs officials.
 
 
 7
 In addition, the evidence showed that both Cheatham-Watkins and Fleischhauer were en route to Houston on Continental Airlines, that Fleischhauer had been to Thailand, a source of heroin, a week before, and that he had lied about the trip to the customs inspector. Cheatham-Watkins, meanwhile, had a telephone receipt showing a call from a "Mrs. Carol Fleischhaner" to Thailand. All of these indications, in addition to Cheatham-Watkins' express implication of Fleischhauer, gave the officials probable cause for the arrest.
 
 
 8
 Fleischhauer argues that the customs officials had nothing more to go on than an "uncorroborated" "informant's tip." But, in contrast to several of the cases cited by Fleischhauer, his case did not involve an anonymous telephone tip; it came from a person in whose possession had been found both heroin and slips of paper bearing Fleischhauer's name. Nor were Cheatham-Watkins' statements uncorroborated. The customs agents found Fleischhauer dressed just as Cheatham-Watkins' said he would be dressed; at the airline counter where she said he would be; and traveling to the city to which she said he would be traveling. Cheatham-Watkins' hotel and telephone receipts were also corroborative of her story.
 
 
 9
 There was probable cause to arrest Fleischhauer.
 
 B. The Search
 
 10
 The next question is whether the customs agents could lawfully search Fleischhauer's belongings. The government justifies the search on two independent grounds: as an "extended border search" and as a search incident to arrest. Because we conclude that the search was valid as an extended border search, we need not decide whether it was also valid as incident to Fleischhauer's arrest.
 
 
 11
 Searches at United States borders are an exception to the customary requirements of a search warrant and probable cause. "The mere entry into the United States from a foreign country provides sufficient justification for a border search." United States v. Alfonso, 759 F.2d 728, 733 (9th Cir.1985). Border searches "are by their very nature reasonable under the Fourth Amendment, and require neither a warrant, probable cause, nor even articulable suspicion." Id. at 733-34. The primary purpose of a border search is to seize contraband on its way into this country. Id. at 733.
 
 
 12
 Border searches are possible not just at the literal border itself, but also at its "functional equivalent," for example an inland airport which is the first stop of a flight from another country. Alfonso, 759 F.2d at 734.
 
 
 13
 "Extended border searches" are also permitted. These are searches which occur sometime after the subject's entry into the country, or somewhere outside of the immediate vicinity of the border. Id. at 734-35. Unlike searches at the place and time of entry, which may be based on "mere suspicion," an extended border search requires " 'reasonable suspicion' that the subject of the search was involved in criminal activity." Id. at 734.
 
 
 14
 In evaluating whether there is "reasonable suspicion" for an extended border search, the totality of the circumstances are considered. This includes the time and distance from the original entry, and the manner and extent of surveillance. Id. at 735. There must be "reasonable certainty" that any contraband discovered in a search was in the possession of the suspect, or in a searched vehicle, at the time the suspect or vehicle crossed the border. Id.
 
 
 15
 Here, the totality of the circumstances justified the search of Fleischhauer's bags. The present facts are very similar to those of United States v. Mejias, 452 F.2d 1190, 1192-94 (9th Cir.1971), which upheld an extended border search. In Mejias, the defendant, a Chilean national, arrived at LAX on a flight from Argentina. His baggage was inspected and he was cleared through customs. A short time later, another passenger on the flight, also Chilean, was found in possession of five pounds of cocaine. Id. at 1192.
 
 
 16
 An hour later an airline employee noticed Mejias nervously pacing outside the customs area. The employee discovered that Mejias and the cocaine-carrying passenger were the only two Chileans on the flight, and that they had pooled their luggage under a single baggage claim ticket. Id. The employee alerted customs officials, who then questioned Mejias. Mejias lied about having been on the flight from Argentina.
 
 
 17
 The officials retrieved Mejias's suitcase, which had been left on a sidewalk. They took Mejias and the bag into the customs room, where a search revealed 4.6 pounds of cocaine. Id.
 
 
 18
 We upheld the search of Mejias's bag. We held that the totality of the circumstances established with "reasonable certainty" that "any contraband which might be found in the suitcase at the time of the search was in that suitcase at the time of entry into the United States." Id. at 1193. This was true despite a 90-minute interval between Mejias's arrival and the search of the bag, during the balance of which neither Mejias nor the bag had been under observation. See id. at 1193 & n. 3.
 
 
 19
 All relevant circumstances are the same here. There was much evidence linking Fleischhauer with the heroin found in Cheatham-Watkins' briefcase, as described in the discussion of probable cause above. Fleischhauer, like Mejias, had passed through customs and was in the airport unobserved for an hour. As in Mejias, these circumstances suggest with reasonable certainty that what was in Fleischhauer's bag at the time of search was in the bag when it crossed the border.
 
 
 20
 Fleischhauer points out that the search in Mejias occurred in the same area as his original customs search, while Fleischhauer had travelled to a different part of the airport. He argues that in traveling from one part of LAX to another, he "mingled in the normal stream of commerce so as to lessen certainty that contraband had come directly across the border." See United States v. Smith, 629 F.2d 1301, 1304 (9th Cir.1980).
 
 
 21
 It is unlikely Fleischhauer's suitcase was any more in the "stream of commerce" than was Mejias's. No one observed Mejias during most of the ninety minutes he was in the airport with his bag. While at the end of that time Mejias was near the same customs area where he began, no one knew whether he had remained there the entire time, or whether he made contact with another person during that interval. Mejias's suitcase, when it was ultimately found, was not in the baggage claim area, but on the sidewalk outside. 452 F.2d at 1192. Yet the bag was clearly Mejias's, and it was unlikely that either Mejias or his bag had travelled far from the area. Under these circumstances we thought it reasonable--not necessary, but reasonable--to assume the contents of the bag had not changed.
 
 
 22
 Similarly here. Fleischhauer was still at the airport, and still carrying his bag. An hour had gone by, less than the ninety-minute interval in Mejias. The fact that Fleischhauer was at a different terminal may have increased the possibility that the bag's contents had changed; but not substantially. Not more than in Mejias, where the subject had gone unobserved for ninety minutes.
 
 
 23
 Fleischhauer's argument that extended border searches are never permissible without continuous, uninterrupted surveillance of the subject is foreclosed by the decision in Mejias, where we upheld the search even though the defendant had gone unobserved. See id. at 1193 & n. 3[1] Similarly, the court was very clear in Alfonso that continuity of surveillance is only "a factor" in determining reasonable suspicion, and merely "enters into the totality of circumstances."[2] Alfonso, 759 F.2d at 735.
 
 
 24
 We hold that the search of Fleischhauer's belongings was a valid extended border search.
 
 II.
 
 25
 Fleischhauer also objects to the expert testimony of Customs Agent Lynn Wood. Wood testified that a paper found in Fleischhauer's suitcase was a drug ledger. Fleischhauer argues (1) that Agent Wood was not qualified as an expert in the area about which he gave testimony, and (2) that there was no factual basis for Wood's opinion.
 
 
 26
 Expert testimony is governed by Federal Rule of Evidence 702, which allows testimony by an expert on technical or specialized matters if it "will assist the trier of fact to understand the evidence or [ ] determine a fact in issue." A district court's decision to admit expert testimony is reviewed for an abuse of discretion. United States v. Rahm, 993 F.2d 1405, 1409-10 (9th Cir.1993). A district court abuses its discretion when it "bases its decision on an erroneous view of law or a clearly erroneous assessment of the facts." Id.
 
 
 27
 Here, the district court did neither. First, Agent Wood was abundantly qualified as an expert in identifying drug ledgers. Among other qualifications, Agent Wood (1) had been a narcotics officer for over 20 years; (2) had taken and taught many courses in narcotics law enforcement, including those dealing with pieces of paper found in narcotics investigations; (3) had been involved in 1000 seizures of illegal drugs, including 100 heroin seizures; and (4) had testified as an expert up to 400 times in state court, and up to 40 times in federal court. These and other experiences qualified Wood as an expert to testify about drug ledgers in this case.[3]
 
 
 28
 The district court also did not err in finding that there was a factual basis for Wood's testimony. The alleged ledger contained a numerical figure, "21,965," matching the approximate street value of the heroin found on Cheatham-Watkins. The letters "I.K." on the paper corresponded to the initials of the heroin dealer of whom Fleischhauer had spoken. The paper also bore the word "twenties," a possible reference to the currency denomination to be used in a drug transaction. It was not an abuse of the district court's discretion to consider these writings a sufficient factual basis for Wood's testimony.
 
 
 29
 Fleischhauer's convictions are hereby AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Fleischhauer argues that Mejias involved a routine, not an extended, border search. He argues that the requirement of continuous surveillance only applies to the latter kind of search. Fleischhauer is correct that Mejias was unspecific about what kind of search was involved there. See id. at 1192-93 & n. 3. But the decision made very clear that whether a border search is routine or extended, continuous surveillance is unnecessary. Mejias, 452 F.2d at 1193 & n. 3
 
 
 [2]
 Fleischhauer is also incorrect that the fact that he had already been searched by customs without any finding of contraband meant that there were no grounds for his subsequent search. Mejias, also, had been searched initially, with no contraband found. It took a second search of Mejias's suitcase for the concealed cocaine to be found. Mejias, 452 F.2d at 1192
 
 
 [3]
 We reject Fleischhauer's claim that because Wood had never testified about a drug ledger in a case he had not personally investigated, he was not qualified to testify in this case. The district court did not abuse its discretion in considering Wood's extensive narcotics background, together with his familiarity with this case, to be sufficient