**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 98-4281

JERRY WAYNE GOLDING,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-97-188)

Argued: October 30, 1998

Decided: February 17, 1999

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge,
and WILSON, Chief United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Vacated and remanded by published opinion. Judge Widener wrote
the opinion, in which Chief Judge Wilkinson and Chief Judge Wilson
concurred.

_____

**COUNSEL**

**ARGUED:** F. Lee Bailey, West Palm Beach, Florida, for Appellant.
Cameron Sue Heaps, Special Assistant United States Attorney, Rich-
mond, Virginia, for Appellee. **ON BRIEF:** Margherita Downey, West
Palm Beach, Florida, for Appellant. Helen F. Fahey, United States
Attorney, Richmond, Virginia, for Appellee.

**OPINION**

WIDENER, Circuit Judge:

A federal grand jury indicted Jerry Wayne Golding in July 1996, charging him in Count One with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and in Count Two with possession of ammunition by a convicted felon in violation of the same code section. At trial, the jury found Golding guilty of possession of the gun but not guilty of the ammunition. Golding appeals from both the judgment of conviction and the district court's subsequent denial of his motion for downward departure at sentencing. We agree that the actions of the prosecutor were improper and prejudicial. Accordingly, we vacate Golding's conviction and remand this case for a new trial.

I.

On June 17, 1996, Jeri Baker, Golding's then fiancee, and now wife, called 911 from the couple's home in Goochland County, Virginia. She was agitated and threatening suicide. Golding also spoke with the dispatcher and assured her that there were no weapons in the house with which Mrs. Golding might hurt herself or, for that matter, Golding.

Shortly thereafter, Corporal James Mann of the Goochland County Sheriff's department arrived on the scene, and Golding also told him that there were no weapons in the house. Golding had a prior felony conviction and maintains that he had complied with the law by getting rid of all of the weapons that he once owned.

According to Golding, it was not until Mrs. Golding ran upstairs that morning and mentioned something about a gun that he recalled that the weapon had been among the things that she had had delivered from her previous residence. At that time, he warned Mann about the presence of the firearm.

Mrs. Golding did proceed to pull the shotgun out from under a mattress, but Mann defused the situation, leaving the shotgun, and left the

2

premises. Mann returned to the Goldings' home that afternoon with a search warrant, at which time he found the shotgun, a box of .22 ammunition, and a small amount of marijuana.

Mrs. Golding claimed ownership of the shotgun. Following a conversation between the prosecutor and Golding's attorney, however, Mrs. Golding was advised to retain her own counsel and eventually not to testify on her husband's behalf (the couple had married in the interim), for fear that she, herself, would be prosecuted. Indeed, Mrs. Golding did not testify, and Golding was convicted.

Golding raises three issues on appeal. He challenges his conviction, first, on the ground that the prosecutor violated his constitutional rights by threatening to prosecute Mrs. Golding if she testified, which was exacerbated by calling the absence of Mrs. Golding's testimony to the attention of the jury, and, second, on the ground that the district court erred by instructing the jury on constructive possession when the government had presented insufficient evidence to support such a theory. Additionally, Golding argues that the district court erred by failing to grant him a downward departure at sentencing.

II.

Golding asserts that the actions of the Special Assistant United States Attorney in this case amount to reversible prosecutorial misconduct, and we agree. The "test for reversible prosecutorial misconduct generally has two components: that `(1) the prosecutor's remarks and conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial.'" United States v. Chorman, 910 F.2d 102, 113 (4th Cir. 1990) (quoting United States v. Brockington, 849 F.2d 872, 875 (4th Cir. 1988)), quoted in United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). We hold that the effect of the prosecutrix's communications with defense attorneys, initially Golding's and eventually Mrs. Golding's, compounded by her closing argument, satisfy both the impropriety and prejudice requirements.

There was no fact finding by the district court with respect to the substance of the communications of the government's attorney with

3

defense attorneys regarding Mrs. Golding's proposed testimony at her husband's trial. In an affidavit attached to Golding's motion for new trial, Mrs. Golding asserted that she owned the shotgun, that she kept it between the mattress and the box spring on her side of the king-size bed for her own protection, and that she originally intended to testify to those facts at trial. She then stated that,

> [a]bout a week prior to the commencement of the trial, Attorney Janus who was defending my husband, told us that he had been approached by the young woman who was prosecuting the case; she told him, he said, that if I were to take the witness stand I would be prosecuted federally for possession of marijuana despite the fact that a state judge had dismissed the same charge against me . . . .

Mrs. Golding indicated that while she still wished to testify on her husband's behalf, she felt, as a result of this exchange, that she had been "forced in this manner" not to appear.

The government did request an evidentiary hearing to resolve the allegations in Mrs. Golding's affidavit. Instead, the district court directed the government to make a proffer regarding the evidence that it would present at such a hearing. In that proffer, the government, represented at that time by Jim Comey, stated that the Special Assistant United States Attorney who prosecuted Golding, broached the subject of Mrs. Golding's potential testimony with Mr. Janus, her husband's attorney. The government went on to represent that she expressed surprise to learn that Mrs. Golding might testify because "she potentially is going to be admitting to a crime" and to note that § 922(g)(3) criminalizes possession of a firearm by a marijuana user. The district court denied both the government's motion for an evidentiary hearing and the defendant's motion for new trial without making any factual findings regarding the nature of the exchange that took place between the prosecutrix and Mr. Janus. In the absence of such findings of fact, this court will conduct a plenary review of allegations of prosecutorial misconduct. See United States v. Ellis, 121 F.3d 908, 927 (4th Cir. 1997) (citing United States v. McDonald, 61 F.3d 248, 253 (4th Cir. 1995)).

Without more, it might be difficult for this court to evaluate the uncertain evidence regarding both the context and the content of the

4

conversation between the prosecutrix and Mr. Janus. The defendant, supported by Mrs. Golding's affidavit, paints a picture of a sinister threat, while the government maintains, via its own proffer, that the prosecutrix merely offered a friendly warning to Mrs. Golding. Other circumstances, however, shed some light on the issue.

At oral argument, the following exchange took place between the prosecutrix and the court:

> Q: He said that you admitted that you told this lady through her lawyer or lawyers that she was going to be prosecuted if she testified, is that correct?
>
> A: No sir.
>
> Q: You do not admit that?
>
> A: What we admit
>
> Q: Did you tell Mr. Janus that?
>
> A: Yes sir, I did.
>
> Q: You said you were going to prosecute her if she testified?
>
> A: That's correct, your Honor.

Contrary to the government's proffer, this was not a gentle recognition of Mrs. Golding's "potential exposure" to criminal charges.

While it is a matter of concern that the Special United States Attorney threatened a defense witness with prosecution simply to prevent testimony which would have been damaging to her own case, that is not all that demonstrates that the threat rose to the level of intimidation necessary to constitute an abuse of process. See United States v. LaFuente, 54 F.3d 457, 462 (8th Cir. 1995). The government did not stop with the threat. Instead, the prosecutrix further abused her power by using the very situation she had created against the defendant in closing argument.

5

Throughout the course of the government's closing argument and rebuttal, the prosecutrix repeatedly called Mrs. Golding's failure to testify to the jury's attention and proceeded to argue that it was indicative of the falsity of the defendant's story. She commented:

> If his story were true, wouldn't the best evidence that this stuff belonged to this lady be for her to come in and tell you all that it was --. . . .

The district court overruled Golding's objection to this line of argument. Bolstered by that ruling, the prosecutrix became even more expansive:

> She didn't ever come up here and testify, and we don't know why." [J.A. 95]

* * * *

> What wife in the world wouldn't just come right on in and tell you the truth, if that was the truth, to prevent her husband from going to prison? You can infer from the fact that she didn't come in, why not? Why wouldn't she come in if it were the truth? It would be that simple. You can infer that it is not the truth. [J.A.95]

* * * *

> And if his story were true, I think that any wife in the world would come in and tell the truth. [J.A. 96]

* * * *

> If that is true, there is nothing wrong with her possessing a weapon and ammunition, and she is the one who possessed them, why didn't she just walk right up here and tell you? [J.A. 105]

Not only was the argument in violation of the testimonial privilege of the wife, the suggestion that the prosecutrix did not know the rea-

6

son for the absence of Mrs. Golding as a witness was at least highly improper.

The authorities are uniform that threatening a witness with prosecution and comment about the absence of a witness who has a privilege not to testify are a violation of the Sixth Amendment right of a defendant to obtain witnesses in his favor. The same rule applies for the testimonial privilege of a wife, except not on Constitutional grounds. At least two cases in this circuit, in circumstances less aggravating than those present here, have so held, as have other circuits.

In United States v. Morris, 988 F.2d 1335 (4th Cir. 1993), the government had called the defendant's wife, who was also the defendant's secretary, as a witness before the grand jury, in which grand jury proceeding she had invoked her marital privilege against giving adverse testimony against her husband, the defendant. The witness was not only the defendant's wife, she had been his secretary for 26 years and was familiar with the affairs in the defendant's office upon which the case turned. The district court recognized that the case involved credibility. Despite that, when the wife testified before the petit jury at trial, the district court allowed the government to prove that the wife had claimed her marital privilege and not testified before the grand jury. It allowed that proof as going to the credibility of the wife. We held that permitting the proof of the invocation of the marital privilege by the wife was error and that it was not harmless because the wife was an important corroborative witness, the case depending, to a considerable extent, on credibility. We also held that there was grave doubt as to whether or not the error had substantial influence on the outcome of the case under Kotteakos v. United States, 328 U.S. 750 (1946). We vacated the conviction and remanded for a new trial.

In United States v MacCloskey, 682 F.2d 468, 475 (4th Cir. 1982), the government's attorney suggested to a prospective witness's attorney that "he would be well advised to remind his client [the witness] that, if she testified at MacCloskey's trial, she could be reindicted [for conspiracy to murder] if she incriminated herself during that testimony [for MacCloskey]." We held that the government's suggestion to the attorney for the witness, as just related,"destroyed the choice

7

. . . [of the witness] to testify freely." 682 F.2d at 479. We held that the error was not harmless and that it "independently warrants the grant of a new trial." 682 F.2d at 479.

In United States v. Viera, 819 F.2d 498 (5th Cir. 1987), the defendant's father was sworn in as a defense witness. Just prior to the trial, the government's attorney disclosed that another witness had implicated the father in several drug transactions and that "should the elder Viera choose to testify, he would likely be forced either to incriminate himself by admitting involvement in these crimes or to commit perjury by denying the involvement. Either way, the prosecutor said he would seek an indictment of Gaspar Viera [the father] before a grand jury convening the next week." The father did not testify, of course, and in his closing argument, as here, the prosecutor compounded the error by this argument:

> We never heard from Dad, did we?

The court held that this conduct of the prosecutor violated the defendant's Sixth Amendment right to present witnesses in his behalf and was reversible error under Webb v. Texas, 409 U.S. 95 (1972), without proof of prejudice.

In United States v. Morrison, 535 F.2d 223 (3rd Cir. 1976), the defendant's attorney had planned his defense around the testimony of one Sally Bell, who was prepared to testify that it was she and not the defendant who had conspired to sell the hashish involved in that case. The government's attorney "sent messages to her through defense counsel, warning that she was liable to be prosecuted on drug charges; that if she testified the testimony would be used as evidence against her and, further, that as she was now 18 it would be possible to bring federal perjury charges against her." 535 F.2d at 225. The government's attorney repeated these threats in a personal interview with Sally Bell. The court held that the conduct of the government's attorney toward the witness was not to be condoned and that it was error requiring a new trial. At the commencement of that proceeding, immunity had been requested for Sally Bell which had not been granted because the government would not request it. The court further held that at a new trial, in the event that the defendant called Sally Bell as a witness, if she invoked her Fifth Amendment right not

8

to testify, a judgment of acquittal should be entered unless the government requested use immunity for her testimony. United States v. Smith, 591 F.2d 1105 (5th Cir. 1979), is a case factually on all fours with the case at hand except on facts less aggravating. Smith was a case involving possession of a firearm by a convicted felon in which it was claimed that the wife owned the guns involved, and not the husband, who was the defendant. There was no threat of prosecution involved in that case as here, only the argument to the jury. The government argued:

> You would have to believe that [the wife] Barbara Smith is a pistol-packing mama to believe that all those guns were hers . . . . And why haven't we heard from Barbara? . . . .

\* \* \* \*

> After all, they have access to that witness. She was here the whole time. You have a right to infer that had she taken the stand she would have testified that those were her husband's guns.

The court held that the argument of the prosecutor, without question, constituted error, for the failure to produce a favorable witness does not apply to the spouse of a defendant. The court further held that the error was not harmless, that the instruction the district court gave with respect to not calling a favorable witness only compounded the error instead of curing it and that the defense that the guns belonged to the defendant's wife was the heart of his defense. A new trial was awarded.

It follows that the conviction of the defendant must be vacated and the case remanded for a new trial. We have not considered any objection to sentencing nor to the claim that the evidence does not support the verdict.*

VACATED AND REMANDED

_____

*We cannot say what the evidence will show upon retrial, and consequently, we need not express any opinion as to the sufficiency of the evidence. United States v. Swaim, 642 F.2d 726, 729 (4th Cir. 1981); see 15 B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3918.7 (2d ed. 1992); cf. Burks v. United States, 437 U.S. 1, 15 (1977).